I'm here on behalf of appellant Brandon Pete. I represented him in the district court as well. We've raised a number of issues in this case. This is a very serious case, involves a sentence, as opposed to the first case the court heard. This does involve the sentence of life imprisonment without possibility of parole. So we've raised a number of issues in this case for reversal. In the limited time that I have, let me see if I can address the issue of the insidious way in which the Federal Juvenile Delinquency Act is circumvented in Arizona on the Indian Reservations. This is the situation that was presented in the Can I suggest that I would like to hear an argument as to that issue and as to the Adult Speedy Trial Act issue in particular? And you may have a little extra time, perhaps, and we'll spend a couple of hours. Thank you, Your Honor. Thank you. This situation was presented in the case in 1988, I believe it was, United States v. Doe, which went in bank in this court, 6-5 decision in this court, that some sort of working arrangement or conspiracy between tribal agents and Federal agents must be found before tribal custody will be deemed to be Federal custody. And this issue Let me ask you about that. It wasn't clear to me whether the standard is in the alternative or not. The paragraph, as I recall, said something like that there wouldn't be Federal ‑‑ there could be Federal custody if the Federal government ordered the custody or some other language there. And then there's another sentence that says, you know, if they  your understanding that that collaboration in bad faith or the motive matters? Well, it's Or has to be proven? Well, Judge Hawkins referred to this burden as the Sisyphean burden to prove some sort of collaboration between the tribal and Federal officers. Obviously, we believe he was correct on that because it isn't You're not talking about the recent Doe case. You're talking about the older Doe case. The old Doe case. That's correct, Your Honor. The 155 Fed 3rd, 1070. That's Judge Hawkins in his dissent referred to it as the burden being too high. It's hard to say from the opinion whether some sort of bad faith motive is necessary. I believe the district court sort of assumed that that was the situation, that some sort of motive, bad faith motive was necessary. But our position in this case is that we don't need to get to that issue because the facts are so much different than what were presented in Doe. In Doe, you had an arrest strictly by tribal officers, allegedly on tribal offenses, that then the FBI becomes involved after that. This is a different situation where the FBI was involved from the beginning of this case. I believe August 20th is when Hoski James makes statements to the tribal police officers. August 21st, the FBI agent is present on the reservation questioning Hoski James, the co-defendant, questioning Irvin Sepai, the co-defendant, taking statements from them. They are arrested on tribal charges immediately after those statements. And on and tribal investigator Charlie go out to find Brandon Peete. And they find him, of course, intoxicated. This is a different situation where the FBI is involved in investigating Federal criminal offenses from the beginning. It wasn't only investigating. Wasn't Agent Mann actually, I mean, didn't he actually arrest him at his house and put him in the car? That's correct. That's correct. He was there. Physically arrested him? Arresting him, yes. He was just there, but he did it. My understanding is he did it. He did it. That's correct. He was there with investigator Charlie. He was the one who grabbed him and put him in handcuffs and put him inside the car that they had at that time, took him back to the adult detention facility in Chinle for some reason. And this case is so much different. This case is more akin to two cases that were distinguished in the Doe opinion, United States v. De Marse and United States v. Jackson, both Eighth Circuit cases, where the Eighth Circuit said, because Federal officers were involved in the arrest, we're going to find this Federal custody, even though these particular defendants were held. And in the De Marse case, for example, it was a juvenile. The juvenile was held in tribal custody. But then to go on here, the charges were actually filed by the tribe. That was the first set of charges were filed after the interrogation on the murder, is that right? That's well They were originally were simply on public intoxication and making threats, right? Right. But the investigator, Charlie, testified that she went to talk to the tribal prosecutor, and the tribal prosecutor told her that Brandon Peete wouldn't likely be held in custody on those charges, and so then the charges of homicide and sexual assault were added. But was that sequential? Was that after a while or immediately? Well, according to her report – well, according to the district court's findings, it was the next day. One happened on the – With regard to the homicide. And another thing I couldn't understand from the briefs is, is homicide prosecuted under tribal law at all? Well, they have a section that deals with that. It's my understanding. I'm certainly not an expert on tribal law, but they have a section that deals with that. But, of course, the tribe generally defers to Federal prosecution when you're dealing with murder cases. But it is possible, because the Major Crimes Act does not make exclusive jurisdiction. Well, there is a section that allows for some type of prosecution under tribal code, from what my understanding is. But I've never seen one go through a prosecution – if there's a homicide involved, it would go by Federal prosecution, not by tribal prosecution. So what do we do? I mean, with the fact that we have a finding by the district court, we have the Doe cases, we have, I would say, a healthy suspicion that this is a strange story, that the Federal FBI didn't care, you know, whether this confessed – now-confessed murderer was kept in custody or let out. I mean, that's basically the story, that the judge had to believe that they were indifferent about this. Or is that not so? Is it superior? No, that's – I believe that's accurate, Your Honor. That's accurate. Or is the other way to construe the case law that it's not that they had to be indifferent, but as long as they already knew that he was already in custody, then, you know, they could just walk away from it? Well, my position, of course, is this was calculated, because this is what they did with the other defendants. Okay. But we have a finding by the district court. What do we do with it? That's what I'm asking you. Well, the – in the Doe case, for example, it's Danova review on the voluntariness of the Miranda waiver and the following. That's a different issue, but we'll leave that on this. Well, in the – in the Doe case, for example, it came up just the opposite. There, there was a suppression by the district court, finding the voluntariness of the involuntary – the Miranda waiver involuntary, and this Court reversed that. Yes, but as to the question of whether this was Federal or State custody, do we have anything other than clear error review? Well, yes, you have the review under DeMarce and Jackson that this is a different situation from – from Doe, because the Federal officers were involved in the – a Federal officer, Agent Manns, was involved in the actual arrest. Okay. Let me ask you. So – which is – which Doe said, that's a different situation that we're not dealing with here. So the Court can reverse on a – on a – on a Danova standard based on the – the law not being properly interpreted by the district court, because the district court can't do that. But in those cases, the BIA actually arrested and charged and – and put the person in custody, right? That's correct. And essentially what they were holding was the BIA is the Federal government. It's not a tribal. That's correct. So, you know, whereas here – let's stick here with that. Two other questions on different issues. Well, remember, Your Honor, the tribal officer, Investigator Charlie, testified that she was the tribal officer assigned to assist the FBI in Federal criminal offenses. I understand that. Yes. Making it much closer to the BIA. Well, that's an interesting point, actually. That's at ER 162. So let's change the subject a little. With regard to the Speedy Trial Act issues, the – the – the Speedy Trial Act problem turns on what we do with the time that the cert petition either was pending or could have been pending, right? Well, it could. My argument is there's still a Speedy Trial violation even if you exclude the time between the filing of the cert petition and the filing of the superseding indictment. Well, that's why I said it could have been pending. But what – but, in fact, the government proceeded during that period. And don't – I mean, doesn't the whole Speedy Trial Act – and, of course, they were able to because the mandate had – had – had issued. And the case was – That's correct. In the district court. That's correct. So why isn't that simply determinative by itself, that – that there wasn't any delay caused by this because, in fact, they proceeded? They didn't delay. Well, that's – that was my argument, that there was no delay caused by the filing of the cert petition because the mandate had issued and this Court had denied the motion to recall the mandate. So there was no – no problem with the – with the proceeding in the district court. And they did. Which, in fact, they did. And they did. Which, in fact, they did when they obtained the indictment on March 30th of 2012. And they could have done it earlier. They certainly could have done it before the cert petition was filed. And, actually, they did it while the cert petition was pending. That's correct. That's correct. All right. Thank you. Thank you, Your Honor. Well, what – what about that problem? I – I don't understand how you can say that – that there was any delay caused by the filing or – or the non-filing of the cert petition when the mandate issued. You were free to proceed in the district court. And you did. Your Honor, the – and may it please the Court, I'm Vincent Kirby, trial counsel below. The situation is this, Your Honor. This is a juvenile matter. And I will tell the – the Court what we relied upon. We relied upon the defendant's affidavit in seeking a recall of the mandate that the petition of writ was filed for delay – not merely for delay to vindicate the defendant appellant's juvenile rights under the FG – FJDA, the Juvenile Delinquency Act. The issue before the government is that this is not the normal course where the Court is asked to make a decision in an adult case and makes it and issues a mandate and time goes on. This is an issue where a juvenile was transferred, appealed, the very jurisdiction to be tried as an adult. Okay. At what point do we continue to treat him as a juvenile? Because, as I – in the brief, if the government has – The Court decided that he shouldn't be – he didn't need to be tried as a juvenile and – or that – and didn't stay the mandate and you were free to go ahead and treat him as an adult and you did. But – and it's correct, Your Honor. But the issue is this. How did this cause any delay? That's what I'm not getting. The delay that was caused was twofold. One is that he was seeking from this Court on a recall of the mandate. Okay. Let's take – let's assume that through that period. And the petition for cert was that he was telling the Court as well as the government that he did not believe the interlocutory appeal process was concluded. But you didn't wait. But you understood that you could proceed and you did proceed. We proceeded, Your Honor, after the period of time in which to file the petition for cert passed. Right. And he filed the petition. And you obviously weren't concerned about what the petition said because you went ahead. Your Honor, I can't – look, I can't categorize it that way. The facts are the indictment came after the petition for cert was filed. The record does not contain matter, Your Honor. I can tell you I was not the appellate counsel. I was not the one to whom the petition for cert was sent. Okay. The fact that two weeks went by may well justify a conclusion that we didn't know – that I did not know about it because I'm the one who sought the indictment or the superseding indictment. There was no request for stay. There was no request to seal the matter at the initial appearance a couple of days later. So it's not that we – that we just delayed and didn't care about it. There's an issue about whether we – whether I actually had notice as the trial counsel that the petition had been filed. But after you did it, nobody stopped you, even though the cert petition was not disposed of yet. So the cert petition couldn't have been causing anything. But, Your Honor, because that whole process could have taken him right out of the adult domain is what caused us to hesitate. It's not the usual course of case through the process of going up. It's still an adult. It's always an adult. It's always in the public record. When you're dealing with a juvenile, if the – if the court had recalled the mandate, we would have had to wait. If the Supreme Court had ultimately said to the Ninth Circuit, you are to review his speedy trial act and you decided he prevailed, we would have put him into the public record before we were entitled to. That's the basis for the delay. There's no – there's no – I just have a very hard time with this because you did it. You did it. You were not, in fact, in the long run, deterred by the existence of this petition. As I say, Your Honor, I – I've explained what the record shows in terms of I would not characterize that we didn't care and we did – No, that it didn't cause the delay because – both technically it didn't cause it because you were free to do it. And as a matter of fact, it didn't cause it because you did do it. So where does the causation come from? Your Honor, as I've repeated, we were operating on the what happens if the court – the court of appeals or the Supreme Court grants him relief at the juvenile level and he does not get into the public domain. That's the – Your Honor, there was no reason for the government to delay other than that because it actually was already a standing indictment. The standing indictment against the three adults was already out there. So there's no reason to delay. There was no – nothing to be gained. And if you look at it, would the case have proceeded immediately upon the indictment or would we have awaited the outcome of the – in one case, if we issued it at the time of the mandate, they asked the mandate to be recalled. It took another month. What if the court had granted – Okay. But if we take all that time out, even if we go through the period that the mandate – the motion to withdraw the mandate was pending? Right. You're still violating the speedy tryout. Is that right? Your Honor, the other part of my petition is we are not certain how a juvenile delinquency complaint gets automatically turned into an adult charge without more. There doesn't seem to be any basis in law or in statutory creations to say that's what happens. Don't you just get an order from the district court and proceed that way? That's what we used to do in state court. That process – at least I've not seen that process in federal court. You have to file a superseding indictment as an adult. And that's what you did. That's what we ultimately did after we believed the time for the petition for cert had passed and had not been filed. Your Honor, if I may – So you're relying essentially on a mistake. Yes. You thought it hadn't been filed, but it was filed. Yes. Because otherwise there was no reason for us to file it when we didn't. If that was our theory, that the petition for cert on juvenile jurisdiction was pending, there was no reason for us to go ahead and indict once that petition was filed. We would have awaited the outcome of the Supreme Court's ruling. As to the Court's other concern about the Doe issues, let me make sure. The juvenile was going to be interviewed by the criminal investigator and the FBI agent. I'm sorry. I can't hear you. The juvenile, when they went out on the 22nd, was going to be interviewed in connection with the missing girl case. However, in the presence of the tribal officer, the defendant was drunk, disorderly, and in possession of alcohol. And also of the federal officer. In his – but – And the federal officer actually physically arrested him and put him in the car. He physically restrained him, but investigator Charlie is the one who placed him under arrest for tribal charges. What does that mean? That it was a tribal arrest. No, I mean, what do you mean he's the one who – you mean at that point when he was out of the house, it was – Charlie said, I'm the one who's placing you in arrest on tribal charges? The testimony in the record is investigator Charlie told him that he was under arrest for public intoxication, threatening, and – At that point when they were out of the house? As opposed to later on after the inquiry? After the interrogation? Oh, no, no. Clearly, Your Honor, he was under tribal arrest at his house. That is why they took him to the tribal detention facility. Not just to hold him to dry out. He was actually under tribal arrest by way of investigator Charlie. And it doesn't make any difference that the federal officer was there holding him down, handcuffing him, putting him in the car, and so on? No, because there's still no federal charges. In fact, for public intoxication, the FBI agent couldn't have arrested him. All right. The next part that bothers me is now we have a confessed murderer. Is there any other case like that? We have a confessed murderer after the interrogation. Yes. And we – and the trial judge found that although we had a confessed murderer, the federal government was just going to keep hands off about whether this was a crime or not. Didn't care. It had nothing to do with whether the decision to keep him in prison on tribal homicide charges. Just didn't care. Isn't this circumstantial evidence? Wouldn't you think if this was a criminal trial that the circumstantial evidence that it's pretty likely that there was, in fact, at least a tacit understanding of how things were going to happen? Your Honor, is there an understanding of how things may happen? They may well be. But the tribe was absolutely entitled to proceed as they did on charges in their sovereignty and their jurisdiction. There's nothing that says the tribe can't go ahead. Whether or not there's going to be federal charges, whether everybody believes it, in the 2004 Doe case, that's exactly what happened. They started them through the process. They decided, let's hand them off to the feds. And the court in that case said, it doesn't matter that everybody knows it's going to be federal. But, Your Honor, in this case, it was not enough on the day that he gave that statement to arrest him. As the court can see from the record... Frankly, having read an awful lot of cases about probable cause, I don't see why not. There was enough to arrest him. There wasn't probable cause to arrest somebody who said, I murdered somebody for murder? There's two parts. There may have been probable cause to arrest him, but the question for the government is, is there enough to proceed to trial on August 23rd of that year? And the answer was no. That's a different issue. But was there probable cause to arrest him? Sure. Definitely. But the case law doesn't say if there's probable cause, we have to arrest. DOE still says that we get to make decisions on how and when to file charges. We didn't have a body. We didn't have a cause of death. We didn't have an identified victim. And if we had taken the juvenile just as he was, all we had were four co-defendants making statements. Now, in some circumstances, maybe that's enough, maybe it's not. It could be that because of the clear error rule, this gets by. But if I were the trial judge, But I think you have to look at the trial judge who has done an awful lot of work in Indian country and understand that this was not a we don't care and we're just going to leave him off. The record is replete with buckle swabs being taken, DNA being taken, OMI being involved in trying to determine the cause of death with just a pile of bones. That's not an easy thing to do. Oftentimes with a pile of bones, we can't say how we did it. Who's doing all that? The federal government? At the request of the federal government, the case is being investigated. As it should have been before. And Agent Charlie testified that her job was essentially to help the federal government investigate major crimes. That's one of her jobs. Her other job is to investigate Indian crime countries in Indian country. She is a tribal police officer. She testified that she would oftentimes prosecute cases tribally that did not involve the federal government. So this was not the first time she had ever been in tribal court with a case. Okay. Thank you very much for your time. May I just have a minute, Your Honor? Yes, please. ER-162 questioned to Investigator Charlie. And that's your primary role, is it not, to work with the FBI on federal felony offenses? Answer, yes, sir. So that was her primary position. Let me just say something about the tribal prosecutions in this case. There is no evidence in this record that the tribe ever proceeded to prosecution on any of these four defendants, all of whom were arrested on tribal charges. Brandon Pete, we know, remained in custody for seven months on a juvenile charge and then was taken by the federal government. With respect to the speedy trial issue, the issue that went to the Supreme Court on the petition for writ of certiorari was the juvenile speedy trial issue. Not the transfer issue. Not the transfer. No, that was the issue that went to the Supreme Court because there was a circuit conflict. This Court's decision explicitly noted that there was a Sixth Circuit decision contrary. Presumably they didn't know that before you filed them. Pardon me? Presumably they didn't know that before you filed. No, no, no. It was in the opinion, in the opinion from this Court on the transfer decision. Because we didn't decide the other because we said we didn't have jurisdiction over it. That's right. Theoretically, you still could have appealed that, too. The speedy trial, the Court would not consider on the interlocutory appeal the juvenile speedy trial act issue. There was a Sixth Circuit decision to the contrary that did consider the speedy trial issue on an interlocutory appeal from a juvenile transfer. But it did decide the transfer question, right? And for all the government knew, you were going to file a petition on that. Well, if they didn't know, well, correct. Until you filed the petition, they didn't know until you filed the petition. Obviously, we served the petition and eventually they responded. Thank you very much. Thank you, counsel. The case of United States v. Pete is submitted.
judges: Berzon, Bea, Gibson